Good morning, Your Honor. Good afternoon. Assistant Public Guardian Christopher Williams on behalf of the Minor AS. Good morning. I'm Assistant State's Attorney Ashley Kouza on behalf of the people. Okay. Well, the appellant, are you going to reserve some time for rebuttal? I would I would reserve some time for rebuttal, although there's there's nothing. I don't think there's anything in this case to rebut. Every single party has agreed that the trial court should be. Well, the question is, do you want rebuttal? Yes or no? Yes. And how much time do you want? I would take five minutes for rebuttal, Your Honor. Okay. And let's proceed. May it please the court. I'm Assistant Public Guardian Christopher Williams. I'm with the Public Guardian. We represent the Minor AS. In this case, we're seeking reversal and remand the trial court's parentage order that found the alleged father, Bruce, to be AS's legal parent. And on remand, the parentage order should be reversed. And Bruce P can be given the opportunity to establish his parentage through the proper procedural sequence, as outlined in the Illinois Parentage Act of 2015. I will point out we're in an unusual situation where all the parties have conceded that the trial court has erred in this case and should be reversed. I would say there's a perfect case on point for for the to guide this court. And it's from the first district. It's from 2003. It's E.A. Devon M. It's cited on page 14 of my brief. And in that case, it's under virtually identical facts, a couple of differences, but essentially a father refused to take a DNA test in a child protection case. And also, can I interrupt you for a second? I mean, I don't think it's factually right on point, because in that case, what wasn't the individual who supposedly or allegedly the father? He refused parentage. He said that, you know, that he wasn't. Where in this case, you know, we have Bruce admitting and an under oath, admitting that, you know, he is the father. And then the other question I have about Devon M. is that that court went through the factors in terms of determining whether the individual who is alleged to have been the parent in terms of going through their, you know, financial opportunity or possibility of supporting the child. So, you know, Devon M. in factually, at least in the way it's discussed in the case seems to be different from this case, but you're asking us to follow it. Your Honor, there are a few different there. I think there are three different fathers in Devon M. It was a consolidated case. In fact, one of the fathers was exactly in the position that Bruce is in in this case. And this court in Devon M. treated, resolved that question last in the case. So what happened was the father wanted to be the parent in Devon M., one of them. And he refused to take a DNA test. So the trial court entered a parentage order anyway. And this court reversed the trial court. So for the other two fathers in Devon M., they had an opposite position. They did not want to be the father. But in Devon M., the last father in this court analyzed it, they said, no, we're reversing this parentage order. And they said, we're going to, this court said, we are going to vacate the order that the parentage order be vacated. And if that father decides that he wants to take a DNA test, we welcome him to do that. And if it turns out that he is the biological father, we invite him to take on his parental responsibilities. So that's precisely on point here. I mean, Devon M. is a little confusing because it involved three different parents. But it's for that last parent, it is precisely on point. As in an appeal, I've rarely found a case that's so much on point. In terms of your other question, your honor, the court in Devon M. did discuss the factors that your honor mentioned in terms of the ability to support the child and the financial opportunities, as your honor put it. And the situation seems to be pretty identical here. The record establishes that Bruce was not paying child support and had no pre-existing relationship with A.S., who at the time was just merely a few weeks old. I'm happy to give the court an update on the current status of the case. I won't offer that unless the court wants it. But so on that factor, this case is extremely similar to Devon M. as well, both in the procedural sequence of events that was reversed. And really, it was the trial court's discretion in Devon M. that this court found was abused in resolving a case where a father refuses to take a test, resolving it really in favor of his position because that father wanted to be the father. All right. Well, my question really goes to the fact that the trial court in Devon M. actually went through the factors, looked at determination whether or not the individual who's the alleged parent is financially able and can carry on the responsibility of support. That wasn't done in this case. That was where my question was going to, is that in Devon M., you know, there was actually a hearing to determine whether or not the person who might become the parent, whether or not they were financially responsible. Well, in this case, I mean, as I said, it was determined that Bruce P. was not paying, Bruce was not paying child support. Like you said, counsel, the child was just born and Bruce was incarcerated. And so it was a little difficult to establish a relationship at that point. And also, Devon M. seems to be very different in light of the fact that there were three individuals who became fathers. In this instance, there is only Bruce, who the mother, after previously identifying another, did state affirmatively that Bruce was the father and that Bruce in open court and under oath stated that he was the father. So I'm really very curious why the guardian's office, public guardian's office, wants to force DNA testing on Bruce. Thank you, Your Honor. First of all, I would say that following the directive of the Illinois legislature set forth in the Parentage Act of 2015, the most important legal principle here is that the child and a number of other parties have the right to essentially demand a DNA test without giving a reason. And that's set forth in Section 401 of the Illinois Parentage Act. So the legislature does not include any kind of requirement that a hearing is held to see the level of financial support or what kind of relationship could be established with the alleged father. That's just not necessary. The child has the right to ask for a DNA test. And in that case, the trial court shall, the statute says shall, order a DNA test. When you're dealing with that mandatory discretionary, that shall, one of the things about it is that you also have to have some kind of a penalty if there is a shall in order for it to be mandatory. And that does not exist in this case. Well, Your Honor, number one, I would point out to, I would point to the fact that the... I'm looking at the case of Board of Education of Waukegan versus Illinois State Charter School Commission. And where they're talking about if the statute expressly describes the consequences of failure to obey a statutory provision, there's strong evidence that the legislature intended it to be mandatory. But therefore, under the mandatory directive of the dichotomy of statutory construction, it is not the use of obligatory language, such as the use of the word shall, that determines whether a statutory command is a mandatory objection. And whether non-compliance with such language dictates a resulting consequence. And there is no such consequence in so far as the language that you are referencing, as far as the parents of Jack is concerned. Thank you, Your Honor. Number one, I'll go to the exact language of Section 401 in the Illinois Parentage Act. What it says is the court may and upon request of a party shall order DNA testing. So number one, the use of the word may first indicates that the trial court has discretion to order a parentage test if it wants. And then the Illinois legislature very pointedly used the word shall in the same section. So that by itself shows that requesting a test is mandatory. So, and this is very important too. I mean, under the Illinois Parentage Act of 1984, which is repealed, that act had essentially identical language about ordering DNA testing. And it was established in 2010, I think it was the case of NRAE-MM, that a child has an absolute right to ask for a DNA test and the court does not have discretion to deny it. So, and that was in the situation where a father had actually signed a voluntary acknowledgement of paternity. So even in that situation, the child had the right to demand genetic testing. So, you know, the language in the 1984 statute and the 2015 statute is identical. I'm comfortable saying there's no question under Illinois law that when the child requests a DNA test, the court has no discretion to deny it. Except when a child has an adjudicated, presumed, or acknowledged parent already. And then another party can ask for the test to be denied under equitable principles under Section 610. And this is covered in my brief. I don't see how you can pass Section 616. If the court finds that the admission of parenting satisfies the requirements of the section, and there's no reason to question the admission, the court shall enter an order adjudging the child to be a child of the person admitting parenting. You've got a man standing in court saying I'm the father. That's the issue. I am the father. And then you want to force him to take a DNA test to prove that he's the father when he and the mother have both admitted that he's the father. Why? Well, Your Honor, we actually don't. The goal is not to force Bruce to take a DNA test. Well, Bruce doesn't want to take the test. Right. But just like in Devon M., the choice is his. He can take the test if he wants to. And if it turns out that he is the father, then he will be named the father. He doesn't want to take the test. I couldn't hear that, Your Honor. I'm sorry. I said that Bruce doesn't want to take the DNA test. And he already admitted parenting. What is the point? And why are we here? Well, we're here because the trial court entered the parentage order way too soon. I mean, in exactly the backward procedural sequence. And I do have to point out, Your Honor, that the right of the child to demand testing trumps the trial court's right to simply adjudicate parentage based on admission. I think the question that Judge Hall is presenting to you is this. Here's a man who acknowledges that he's the father, so he's going to be responsible for this child. There's no one else who says that they're the father. So why bring an action? Because if we have to reverse it and he doesn't want to take the DNA test, then this child has no father and no one to support him. So I think that's really what her question is. Why are you suing here? Why are you appealing? Initially, we asked for a DNA test to get some certainty about the biological relationship between A.S. But why do you have to go that far when somebody says he's the father and there's no issue about it? It doesn't appear to be an issue. Well, number one, there does seem to be an issue. I would argue that there is an issue about the certainty of it. I would point out that on appeal, the mother has presented a letter asking for the parentage order to be vacated. So this is a two-way street. It's the mother and the father who have to admit to this, right? He did admit before the court that when the other gentleman's test showed that he was not the father, that the other person that she had a relationship with was a fellow named Bruce. And he acknowledged that he was the father. She didn't say that there was a third person. No, she didn't. But, well, number one, she said that at one point when Bruce wasn't even there, she said that on March 3rd. And then on the 5th, when the trial court entered the parentage finding, she wasn't even in the courtroom. But the bottom line here is that if the court reads the statute so that as long as the father admits to parentage, then the trial court has the right to enter a parentage finding, regardless of any request for testing by any other party, then Section 401 becomes a nullity. It really does. Why should any other party be involved? Why should any other party be involved in light of the fact that the mother and the father both agree that Bruce was the father? So you're saying regardless of what, of any other party, if the court can submits a warrant of parentage in light of the fact that the mother and the father say that Bruce was the father, then you said, in light of any other party getting involved, why should any other party be involved? Because the Illinois legislature specifically allows other parties to object to an admission and ask for DNA testing. That was my question. Yeah. I want to follow up on a question that Justice Hall had asked in regards to Bruce basically under oath making an admission. And pursuant to the statute, if I read it correctly, there's a presumption at that point in time when he makes the admission. So the question then becomes, and the record seems to be signing here, then isn't there an obligation on the other side to rebut that presumption? And I haven't seen any evidence here where that presumption was rebutted. I mean, we seem like we go from the presumption to all of a sudden now we're going to, you know, require this gentleman to take a DNA test. Where in the record is there a rebuttal of this presumption? Your Honor, I would argue that there is, first of all, there's no presumption created by an admission. I'm not sure what section of the statute you're referring to. I know that the Parentage Act creates presumptions of parentage due to marriage and in certain situations where the child is born in a certain period of time in marriage. But an admission of parentage does not create a presumption of parentage that has to be rebutted. That's not in the Parentage Act of 2015. What it says, what section 616 says is that the trial court may accept the admission of two parents who claim parentage. But again, the Parentage Act also says very clearly that parties have the right to demand testing. And as I stated before, under identical language in the former statute, this court has already ruled that the child has the right to demand testing and the court has to order the test upon request. So it's simply not the law of the state of Illinois that as long as a father admits to parentage, then that's it. This question is settled if the trial court wants it to be that way. I would argue strongly that that is just not the law of the state of Illinois. It wasn't the law under the Parentage Act of 1984 and nothing's changed under the Parentage Act of 2015. And Justice Hall asked, why should another party be involved? And I follow up on that question and say and just reinforce the fact that the Illinois legislature does not require any party to give a specific reason why they're asking for a DNA test. So, you know, the state can ask for a DNA test. The child can ask for a DNA test. And that's that's how Illinois law is. And it's been it's been established since 2010 under the old statute. I think it was the case of In re Am Am. So, I'm still haven't gotten past 616. If court finds that the admission of parenting satisfies the requirements of the statute, and there is no reason to question the admission, the court shall enter an order adjudging the child to be the child of the person admitting parenting. That the court has that authority, and you're trying to say that the court doesn't have the authority to order parentage in the case of an admission of a parent who has, under penalty of perjury, while making an appearance or during a hearing, admitted to parentage. That's the exact case that we have before. And you're saying that the judge didn't have the right to that order. Not, not in not in a case where the child asked for a DNA test. Your honor, that the child's right to a DNA test trumps the trial courts right to simply accept an admission. Where does it say that one step. That would be shown by In re Am Am from this court in 2010, and it would also it would also it's shown by the fact that if, if the trial court had this unfettered ability to just simply accept an admission of parentage, even in light of somebody asking for a DNA test and just say no, you don't get your DNA test. Because I'm simply want to accept the admission, it would render section 401 a nullity, it would completely remove the right of the, of the child and other parties to ask for a DNA test, it would be, it would be irrelevant, it would, it's in, and we have to assume that the Illinois legislature did not include section 401, giving parties the right to ask for DNA tests. For no reason. I mean, it's it's there for a reason it's it's it's not. And if the Illinois legislature wanted to make it clear that you know the the trial courts right to accept an admission was good trump any other objection to the parentage finding they would have said so. So section 616 is language standing alone, I argue, does not give the trial court an unfettered right to find parentage upon admission, only when other parties are not objecting. Otherwise, the parties have no right to demand testing that right means which is set forth clearly in the statute that right is meaningless. It would be completely meaningless if the if the statute were interpreted that way and and and children, other parties would have, they wouldn't have any real right to ask for a DNA test. So that that's, I don't think that the Parentage Act of 2015 should be read to nullify other sections, one section should not be read to completely nullify another section. And I think if the court took this interpretation about 616 it would render section 401 a nullity. And another important fact here judges that there's other indications in the Parentage Act. The judge considered the DNA test, the judge considered the DNA, can you hear me? Yes. And the judge considered the admission, and then the judge made the decision. Well, the judge did not consider the results of the DNA test. So where I was just about to go was the other section of the Illinois Parentage Act, which, and this is section 404 and I cited this in my brief, Your Honor. So section 404A states specifically that if, if as the, after a DNA test, the court will resolve the question of parentage accordingly. And that means that the trial court will follow the results of the DNA test when somebody demands it. So if a party has the right to demand a DNA test, the court has to order it. And then the Illinois legislature said, okay, when that when those results come back, then, then the trial court makes the parentage finding. So if 616 gave trial courts an unfettered right to just enter a parentage finding upon admission alone, it would also render section 404 a nullity. It would make that section meaningless, in addition to section 401. So, I would argue that the legislature did not, the legislature has presented a very clear sequence, a procedural sequence of events of how to make a parentage finding. And they would not have put this in there, but, and only to mean that the trial court can accept an admission. When the legislature was making this consideration, and the way it's written, it's assuming that the respondent is, that the respondent is opposing parentage. And in most instances, that would be so. But rarely do you see where the respondent is admitting parentage, and then the draconian enforcement of DNA tests is demanded by a party representing the child. And that rarely do you see that instance. And the way it's written in most instances, if the respondent is saying, I'm not the father, then people can require, in most instances, they ask for DNA tests. But this is different, and I don't think we acknowledge it's different in the facts of the case. Well, I certainly acknowledge that the alleged father in this case admitted to parentage and is offering to become a legal father. That's the case. I certainly do acknowledge that. They're open court under oath. Yes, yes. So I acknowledge that. But the Illinois Parentage Act of 2015 does not state specifically that. What it says is that if a party refuses to do a DNA test, which is the case here, the court has two options. The court can resolve the question against the position of that individual. And Bruce's position is, I want to be the father. That's his position. So the court, just like in Devon M., the trial court should have either resolved it against him or said, look, I'm going to hold you in contempt. I mean, we're not asking for a draconian finding. We don't want a contempt finding. But, you know, you want to hold a man in contempt because he's admitting that he's the father and doesn't want to take the DNA test. You want to hold him in contempt. I just stated, Your Honor, we don't want to hold him in contempt. We want him to take the test. We want him to follow what would otherwise be a completely valid order to take a DNA test. And these orders are entered all the time, of course, as Your Honor knows. And usually fathers comply with a valid order for DNA testing. It's a simple swab of the mouth. So the Illinois legislature set forth this procedural sequence. And if they wanted to say that an admission trumps everything else, they would have. So the Parentage Act does not say that if the father is denying parentage, then the court may resolve the question of parentage against the father. The statute does not say that. It says the court may resolve the question of parentage against the position of the individual. And that's precisely what happened in Devon M. So, I mean, Devon M is guiding precedent here. It really is a similar thing, aside from any questions about the ability to show willingness to support or whatever. But we know, I think, that the Illinois Parentage Act tries to create a balance between the value of children having a parent and the right of parties to ask for accuracy in that determination. So these things are balanced. And if the court interprets the statute so that, you know, the trial court can simply order a parentage finding upon admission, regardless of any objection to it, there is no balance there at all. It completely gives an alleged parent almost an unfettered right to do what he wants. You're going to have to sum up here way past your time. I have one other question. So I might have missed it, but it doesn't indicate in the record if he was ever asked why he's refusing to take a DNA test, does it? No, Your Honor. The trial court asked him why, and Bruce replied, I don't do that. He didn't give a reason. The trial court didn't ask. He just simply said, I will not take a parentage test. And I asked you why, the guardianship, the other party, why? And they said, we don't have to give you a reason why. Under the Illinois Parentage Act, a reason for a test is not required, Your Honor. Yeah, no, I just wanted to make sure that it wasn't in the record. I might have missed it, but okay. You'll still have time for rebuttal, but we'll hear from the state now. Thank you, Your Honors. May it please the court, I'm Assistant State's Attorney Ashley Kouza on behalf of the people. The people concede that the juvenile court's paternity finding violated the procedures for adjudicating parentage contained in the Illinois Paternity Act. And we agree with Mr. Williams that the relevant rule here is from Section 401 of the Illinois Paternity Act. But before I discuss that rule, I want to jump to Section 616. Because as Justice Hall, you pointed out, that does appear to be the section under which the juvenile court entered the paternity finding in this case. And Section 616 states that if an individual admits paternity in open court, and here's the key language, the court finds that there is no reason to question the admission. Then the court shall adjudicate that individual to be the parent of the minor. So when entering its paternity finding, the juvenile court here said, in paternity court, if somebody walks in and says they're the father, they're stuck until the kid's 21. So it does appear that that is the portion of the statute the court was using. However, the juvenile court's finding, the application of that statute was inappropriate, given the facts of this case. Because the juvenile court's finding that there was no reason to question Bruce's admission of paternity in this case was against the manifest weight of the evidence. Here we have a mother who initially testified that she didn't know the identity of the minor's father. And then she said the minor's father, the possible father for the minor was a man named Leonard. And she said that there were no other possible fathers. A DNA test subsequently determined that Leonard was not the minor's father. And two months later, the mother told the caseworker that Bruce was a possible father. So Bruce was ridden from Cook County Jail. And when asked if he was the minor's father, he stated, yeah, possibly. And then when offered a DNA test, Bruce refused. And only after refusing that DNA test claimed that he was absolutely certain that he's the minor's father. So taking a step back and looking at the record as a whole, there's no reason to question the admission. And this is the part where the mother admitted in court that Bruce was the father. That's correct, Your Honor. She admitted in court that Bruce was the father. However, we have to also consider the caseworker's testimony prior to that. That she simply named him as a possible father. And that she, in fact, named another individual as a possible father prior to that, who proved not to actually be the biological father of the minor. So it's the state's position. I'm sorry, I have a question here. So what's our standard review here? If we're looking at the manifest weight of the evidence, I still believe it would be de novo review because we're looking at the language of the statute.  But I think if we're doing statutory interpretation, obviously it's de novo review. But here, because I think if we look at this in the context of Section 616 and the court's utilization, even though it wasn't expressed, I believe an implicit use of Section 616 to reach the paternity finding, then it would be a manifest weight of the evidence standard, which here the evidence simply doesn't support the finding. So again, the people's position is that Section 401 is the section that controls. And that's the section that states, upon the request of the child, the court shall order or direct the alleged father to submit to DNA testing to resolve the question of paternity. And as Mr. Williams discussed, Section 414 explicitly sets forth consequences to noncompliance. It states that if a party refuses to submit to genetic testing, that the court may resolve the question of paternity against the party, or enforce its order for genetic testing if the rights of others and interests of justice so require. Now, if you also look at Section 615 of the Illinois Paternity Act, it actually emphasizes and clarifies those consequences. It states that an order for genetic testing is enforceable through a proceeding for adjudication of contempt, or if an individual declines the DNA test as ordered, the court may adjudicate parentage contrary to the position of that individual. The state's position is that the appropriate consequence in this particular case was the Section 401 and 615 sanction of contempt of court. Now, while the juvenile court could have held Bruce in custody, or if a hold in custody was of no consequence to Bruce, given the fact that he was already in custody, the appropriate remedy here would be to simply impose a daily fine in some sort of minimal amount. His criminal case eventually had to resolve, and these fines would add up. And while these sanctions certainly don't guarantee that Bruce will comply with the court-ordered DNA test, the juvenile court needs to at least take that first step and try to use the rules that are put in place by the legislature. And I want to circle back to answer the questions, I think, of all the justices here as to why we care, why this is important. And it's very important, not only for the minor, but for the integrity of the child protection proceedings. Paternity findings are very significant in the context of child protection proceedings for a number of reasons, but I want to talk about three very important considerations. One is that the parents have a constitutional right of due process to receive notice of child protection proceedings involving their child. The second is that there's a significant and often irreversible legal implication of paternity findings entered in child protection proceedings. And third is that a paternity finding obviously has a profound psychological impact on the minor, who is the subject of the People's Petition for Adjudication of Wardship. So circling back to that first consideration, again, there's an important constitutional component to paternity findings in child protection proceedings. A minor and his or her parents have a constitutional right of due process to receive adequate notice of the child protection proceedings. And consistent with that mandate of due process, the Juvenile Court Act requires that summons and a copy of the petition be served on the minor and his or her parents. And if the identity of the father is unknown, the Juvenile Court Act mandates that DCFS perform a diligent search to locate him. And then if the father can't be found... You already have a man standing up in court. All three of these things are applicable. The court went through it with him, stated to you all in open court, so he's willing to be responsible until the child becomes 21 years of age. He understands the significance of the paternity. And still, and he's willing to be the father. I mean, these things that you're arguing are in instances where the respondent is unwilling to be a father. And you're trying to prove that he is. And this man has already stepped up, told the judge, he's willing to step up to the plate. To assume fatherhood. And you're trying to force him to pay a penalty for refusing to take a DNA test. Or to remain in jail longer for refusing to take a DNA test for a child who he's willing to say is his own. And the failure or the problem in the scheme is because the mother said she slept with two men. I understand your concern, and it's very valid. Because the purpose of the Illinois Paternity Act is to ensure that every minor has the support of his or her two parents. So we're not in the business of making children fatherless. So that is a valid concern. But we have to balance that concern also with the need for accuracy as best we can in some of these child protection proceedings. Because the service requirements that are in place are not required if a party appears in court. Because that constitutes a waiver of service and a submission to the jurisdiction of the court. So it's important to recognize the role that paternity findings play in these notice requirements. Because once the juvenile court enters a finding of paternity, that individual has party status. And his appearance in juvenile court fulfills the notice requirement. And so they would have that status. True, but in this particular case, there's a very good chance that the juvenile court's unsubstantiated paternity finding actually deprived the minor's real father of notice of these child protection proceedings. So the juvenile court has to follow the Illinois Paternity Act's procedures to ensure it enters reliable paternity findings. Along those lines, I have a question. Something that's kind of bothered me a little bit. So before Bruce comes to court, there's an order issued on March 3rd, indicating that he's supposed to submit to parentage testing. And that his DNA is going to be compared with the child's DNA. Now, the record doesn't indicate anything with regards to discussion or a basis for the court's ruling on that order. And the next thing we know is on March 5th, Bruce is in court. He's asked questions. He's not represented by counsel at that time. But the court starts asking him questions with regards to his education and so on and so forth and getting into other factors. And then at some point in time, and again, the record's not clear when this actually happens. And then he's given an opportunity to have an attorney. So I know we were always talking about the child's right and the child's interest in here. But it appears to me from this record, and we don't have an entire record here because some of the proceedings seem to be missing. But what about his alleged rights with regards to this proceeding? It seems like, you know, all of a sudden he's issued an order. And I get that he's in Cook County Jail, but he's issued an order. We don't know what that order really says because the court doesn't discuss it and there's no record of it. And then the next thing we know, he's in court and then he's being asked questions without being represented by counsel. I agree. And I agree that this court shouldn't have entered a DNA order until Bruce was present in court, represented by counsel, and it was fully discussed amongst the parties. But I also know that it's, I believe it's relatively common procedure to do something called verifying the petition. And I believe that's what they did with Bruce in this case. They swore him in to verify his information in the petition. And I think that also helps the juvenile court determine whether he's eligible for appointed counsel. At that point in time. And that's in the record? Yes. So another important consideration I think this court should consider is that paternity findings and child protection proceedings have very significant legal implications on the minor. In Section 621 of the Illinois Paternity Act, it states that a child is bound by a determination of parentage when the child was a party in the proceedings determining parentage and was represented by an attorney and guardian ad vitem. And Illinois courts have echoed this ruling, finding that preclusive doctrines bar a minor who was a party and represented by counsel during proceedings that litigated paternity from then relitigating the identity of his legal father and future paternity actions. So, given the finality and the permanence of this order, it was imperative that the juvenile court abided by the procedures set forth in the act to ensure that the minor had the opportunity to fully and fairly litigate the issue of his paternity. And last, like I mentioned, paternity findings also have a profound psychological impact on a minor. Establishing paternity essentially creates a parent-child relationship that before then was legally non-existent. And the knowledge the person is or is not one's father has a profound emotional impact on a child, regardless of whether that's positive or negative. In child protection proceedings, that impact is even more pronounced because a paternity finding will impact if and when the minor may be returned home and, consequently, where the minor will spend some of the most formative years of his life. So in sum, this paternity finding is not legitimate. It was contrary to the plain language of the statute. It's not supported by the evidence. It has a profound and a permanent impact on the minor, and it obviates the minor's ability to fully and fairly litigate the issue of his own paternity. It also undermines the state's critical responsibility to serve the minor's parents with notice of its petition for adjudication of wardship, and that due process component cannot be understated. How does it undermine that? Because- To inform the parents, and both parents were standing there in court being informed, or informing the court. How does it undermine? Because we really don't know that Bruce is the father, and given the sequence of events that transpired prior to his admission, there was an abundance of evidence that put his admission into question. So- Okay. Sure. So it's the state's position that, given that the due process component is so important, it requires more than an unsubstantiated or a haphazard finding of paternity like the one that was entered in this case. So for these reasons, and those stated in the people's brief, we ask that you vacate the March 5th, 2020 paternity order, and remand the matter to the juvenile court to adjudicate the minor's paternity pursuant to the procedures set forth in the Illinois Paternity Act. Any questions by any members of the panel? Two questions. Is there going to be any other arguments from any of the other appellees? Just your argument. Rebuttal. All right, then let's hear a rebuttal, I guess, if there is any. Thank you, Your Honor. I'll give a brief rebuttal here. I wanted to address Justice Ray's questions first about the record. I mean, what happened here was that the trial court entered an order for Bruce to submit to DNA testing on March 3rd, and Bruce had not appeared at that point. But when Bruce did appear two days later, the trial court asked him some questions before he was represented. But my reading of the record and what the trial court did was said, okay, okay, I'm going to hold this to give you an attorney. So Bruce was able to consult with his lawyer, and then they came back in front of the trial court. And essentially, the trial court repeated its questions and said, you know, hey, do you want to do this test? Okay, you're refusing to do the test. So Bruce's rights were protected. They were because he had an attorney representing him. Basically, there was a short period of time when he did it, but then the court held it and signed him an attorney. So I would argue there's not a problem there. And there is a record of that March 3rd DNA order. It's in the common law record. I believe it's at C-24. And I would say that basically, in terms of the standard of review, it may be a mixed standard of review because there is a de novo statutory interpretation aspect here. There's no doubt about it, because one of the questions here seems to be Section 616, the court's ability to accept an admission of parentage. Does that all the other sections of the statute that set forth a procedural sequence for making parentage findings? That's a question of statutory interpretation. As I said, Section 401, the states argued that the child has a right to demand DNA testing. And that's true. But in fact, it reads, upon request of a party, the court shall order DNA testing. So that includes the state. That includes other parties who may be involved. So this is not just relating to the child. The Illinois legislature decided that other parties have the right to demand DNA testing. So then if you go into Section 404, which says you resolve the question after the results of the test are come in, and then if you go to Section 615 and the other section, what happens to how do we deal with testing? So in this respect, there is a consequence for refusing testing. And that shows that the language is mandatory in Section 401, that word shall. It's also mandatory because it's interspersed with the word may, as I argued before. So if Section 616 allows the trial court to accept an admission of any man who comes forth and refuses a parentage test, these other sections of the statute are rendered completely meaningless. They really are. The act sets forth a procedural sequence for trial courts to follow. And the General Assembly, the Illinois legislature, did not put in this section saying that parties have a right to demand testing for no reason. They didn't put it in with the understanding that that right doesn't really exist. Because a reading of 616 to give the trial court unfettered discretion would result in that. And lastly, I would say we're not asking the father to pay a penalty here. We are asking him to comply with a valid order in the same way that countless fathers in child support or child protection court do all the time, which is just give a saliva sample. And that's it. It's a very simple thing. The thing is, when Bruce refused to take that test, the Illinois legislature set forth two choices. It's in there. And it's to resolve the question against his position or entertain some enforcement action. And we're not seeking an enforcement action. I mean, that's one possibility upon remand. But we're not asking that he be imprisoned or anything like that. We're asking that the parentage order be vacated. And then the alleged father can say, OK, if I really want to be the father, then all I have to do is give this simple saliva sample. I mean, one of the most noninvasive things you can imagine. I mean, and that's really all it is. It's a swab in the mouth. And that's all we want the father to do. And it's not a penalty. It's not a penalty. It's it's it's, you know, using our rights under under Illinois law that allows parties to to demand accuracy. And so we give up the good for the bad. I'm sorry, your honor. So doing we sacrifice the good for the bad. Um, I think I think accuracy is is the good. I would argue that accuracy is the good. And I would also recognize that when a parent wants to admit parentage, that that that's generally a good thing. But as as the state pointed out, I adopt that argument. There is question here about the accuracy of of this of the biological relationship here, because the mother did say to to the DCFS worker, which is in the record that testimony of what she said. She said Bruce may be the father. And then later she said he is the father. So there's these two different things. I mean, I recognize that the mother said, yes, Bruce is the father. But it's there's there's some uncertainty there. But I still say we don't need to get there because the Illinois legislature did not give right parties the right to demand testing for no reason. I just want to point out that, you know, there's a case Galvez v. Rentis from the previous Parentage Act that interpreted identical language. It said when a party asked for asked for a DNA test, the court shall order it. Sparks v. Sparks, which is a 2018 case interpreting the new parent says the exact same thing. If this court affirms the trial court on the basis that parties actually don't have the right to demand testing, they can ask for it, but the trial court can ignore it. If that's the ruling, I would argue that this court would have to explain why it's overruling Sparks v. Sparks. In re MM, which I cited before, all these cases that clearly established that the child and other parties have the right to demand testing. Those cases need to be overruled. And if this court, if this court is interpret 616 is to be an unfettered right on the trial court, it will it will radically alter Illinois law when it comes to parentage. And it will be contrary to the actual directives of the Illinois legislature. Let me ask you this. Isn't the bottom line for us to determine what is the best interest of the job? I would say no, Your Honor. Usually when it comes to children, that is the bottom line. But in fact, under under the former Parentage Act and this has this has not changed. The Illinois Supreme Court ruled that in parentage determinations, best interests are not or do not come into play when determining parentage. In other situations, the Illinois legislature has set forth clearly when best interests are a factor in making determinations. The word best interests is not in the Illinois Parentage Act except the isolated places. But relating to Section 610, which gives the court in this limited opportunity the ability to deny a test, a testing request. So so here, you know, you say that, you know, it's not there. But in 610 B, it says it's presumed to be equitable and in the best interest of the child to grant a motion by the child representative by a guardian ad litem or attorney seeking an order for generic testing. Isn't that an excellent point, Your Honor? Thank you. And I stated best interest is not mentioned except in Section 610. So you're absolutely correct. But what that shows, I mean, it says it says clearly it is assumed to be equitable when a child requests testing that testing should be made. So but and that just reinforces the initial point that that when a party, especially a child asked for a test, the court has to order it and then has to wait on making a parentage determination until the results come in. And it's only in the case where a child has an adjudicated, presumed or acknowledged parent that the trial court has the ability to deny a request for genetic testing. So you see, I think it's much more simpler than the way you're stating it. I think that that statement is what this case is all about. And the court denying the child's request must state the basis on which the presumption of best interest was overcome. And the court ultimately has to decide what is in the best interest of the child. Always. It's always the best interest of the child. I don't care what case you show me. That's always the case. Best interest of the child. And it's the best interest of the child to say here when a man says this is my my child and the mother says this is the child. That would seem to overcome that presumption. Your Honor, Section 610 does not apply to this case because Armani A.S. did not have an adjudicated, acknowledged or adjudicated father. So there is there is no and that old Section 610 to the ability to deny genetic testing only applies to children who have a preexisting legal parent. And Armani did not. It's very clear in the statute. So there was no ability for any party to come in and say, no, the court should deny genetic testing based on Section 610. When a child does have a preexisting parentage relationship and a party wants to ask the court to deny a request for genetic testing, then Section 610 comes into play, but only in that situation. Otherwise, when a child doesn't have an adjudicated legal parent, a party's right to demand testing is it trumps the trial court's right to simply accept the admission of a man coming forward. That is that's always been the state of Illinois law. And it's nothing. Nothing has changed in the Illinois Parentage Act of 2015. Under 610 is is Bruce the presumed parent? No, absolutely not, Your Honor. Absolutely not. That presumption comes from marriage and the adjudication. It has to be pre-existing. It has to be pre-existing. Otherwise, it wouldn't make any sense if. Yeah, so. So those best interest factors only applied to children who have a pre-existing father or pre-existing parent. In this case, that's not the case. It's not the case. And and the Illinois legislature says when you ask for a test, the court has to give it. It's not based on on best interests alone. I mean, it's not based. It's sort of an unfettered right. And it's the language is mandatory. In the context of also saying may. So we know we know what the Illinois legislature is talking about. I mean, we know what they're intending. They set forth a sequence of how to do this. And the trial court simply did it backward. And I will say if if Bruce would simply take this simple saliva, get a give a simple saliva sample and he is the father, then we this will be settled. This will be resolved. There will be no question. He will be the father because all the trial court has to do in that situation is follow the law, which says when the results of the genetic testing come back, the court will resolve that question of parentage accordingly. It will resolve the question of parentage according to the results of DNA testing. And that is the way that's the Illinois legislature's balancing of the need for accuracy with the need for not requiring genetic testing in every single situation. So it allows efficiency. It allows parentage findings to be made when everybody agrees when I say this is fine. OK, this is great. Let's not question this, you know. But in this case, when a party and it's not just the child, the child doesn't have to give a specific reason for testing. The state does not. No party does. If if that were the case, the Illinois legislature would have said so. So the bottom line is the Illinois legislature is set forth what the trial court, how the trial court erred here. The trial court ignored the procedural sequence set forth in that. And that's that's the bottom line. And in this case should be reversed. The parentage order should be reversed, just like in Devon M. And Bruce should be invited to take the test. And if he is the father, he is absolutely able to assume his parental responsibilities. If he refuses, then what? If he refuses, then that's it. I mean, the parentage order should be reversed. Then if he refuses, he can change his mind at a later date. Because this is important because Bruce will never be foreclosed from bringing an action action to establish his own parentage. Right, because there will be no parentage order. So the ball is in Bruce's court. All he has to do is take the test and then he can step into his parental role. And if he refuses, then the court has to follow what the Illinois legislature tells it to do. And those there are two options, which is to resolve the question against his position. And that doesn't it's not only a father. But the court looked at what would be for it and made its decision. So either you uphold the court or we reverse it. But the court did make a determination. There is an order that exists that allows Bruce to be the father. Right. And that determination was in clear error and contrary to the Illinois Parentage Act of 2015, as every single party in this case agrees. The Illinois legislature did not set forth a series of procedures for determining parentage for no reason, only to only to intend for trial courts to have unfettered discretion to accept admissions, regardless of anybody's objection. There's just no way the Illinois legislature could have intended that. Otherwise, all these other provisions that guide trial courts in making parentage determinations are meaningless, superfluous, annullity. They mean nothing. The clear right of a party to demand testing would mean nothing. The direction that a court should resolve the question of parentage after a genetic test would mean nothing. The direction that a trial court should only enforce an order if the interests of the parties and justice require it, that would mean nothing. Here, we're not asking to enforce that order with contempt because the interests of the parties and the justice do not require that. That's not in the interest of anybody. What is in the interest of everybody and the law is for Bruce to simply allow a sample of his saliva to be analyzed. Or be held in contempt. That is what you're asking. Or no, I'm asking that the question be resolved against his position because because, as I just said, the seeking a contempt finding, we would only seek a contempt finding and some kind of punishment to Bruce if the interests of justice and the parties required it, because that's the direct statutory language of the Illinois Parentage Act. And we don't believe it does. I mean, we believe that the question should be resolved against him, just like it was just like the appellate court ruled in Devon M. And then Bruce, the ball is in Bruce's court to do a very simple thing that, you know, and if if if trial courts can ignore requests for DNA testing, it would result in parents just being able to to come in and just simply refuse a valid court order. You know, what what is that? What is the point of putting in the ability of parties to demand a court order for testing? If parents have the ability to say no. No, I'm sorry. And then it's like, OK, what will name you the father? I mean, that is not what the Illinois legislature contemplated. It's really clear to me in the in this procedural sequence set forth in the act. And, you know, best interest is certainly always animates our decision making. But when it comes to asking for testing, the only way a best interest analysis comes into play is if the child already has an adjudicate, already has a parent, a legal parent, in which case it doesn't. So it doesn't apply. And here's one last important point. You know, the Illinois legislature. Could have said these equitable factors in six to ten apply to any parentage action. And that would mean that it would apply to a child where a parentage action involving a child where the child doesn't have a preexisting legal parent. The Illinois legislature could have said that they pointedly decided not to. So when a child does not have a preexisting parent, the question of parentage is unresolved. It's open. And the Illinois legislature clearly gave parties the right to seek accuracy in that determination. Accuracy. The simple act of a father's wanting to step up to the plate is admirable, but it's not controlling. And if the Illinois legislature wanted to make controlling, they easily could have. And I have I'm I'm ready to call it here unless the court has more questions. I'm happy to answer any questions. All right. Does anyone have any more questions? No. OK, well, thank you very much. You know, you gave us a very interesting case and both of you did a very good job in your oral arguments and in your briefs. And we thank you for that. And shortly, you'll have a decision in this case and the court will be adjourned. But I'd like to ask the two justices to remain for a few moments.